UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRUCE'S WRECKER SERVICE, INC.,      )
                                     )
                Plaintiff,           )
                                     )
        v.                           )       No.  4:09CV556 FRB
                                     )
AUTOMOBILE CLUB OF MISSOURI,         )
                                     )
                Defendant.           )

<u>**MEMORANDUM AND ORDER**</u>

        Presently pending before the Court is defendant
Automobile Club of Missouri's Motion for Summary Judgment (Doc.
#51).  All matters are pending before the undersigned United States
Magistrate Judge, with consent of the parties, pursuant to 28
U.S.C. § 636(c).

        Plaintiff Bruce's Wrecker Service, Inc. ("plaintiff"), an
Alabama corporation, brings this breach of contract action against
defendant Automobile Club of Missouri ("defendant" or "AAA
Missouri"), a Missouri corporation, alleging that defendant
breached the terms of an Emergency Road Service Agreement by
wrongfully assigning tow and service calls within plaintiff's
service area to other contractors; wrongfully depriving plaintiff
of light service and battery calls for a thirteen-month period; and
wrongfully terminating plaintiff as a contractor for defendant.
Plaintiff also claims that by its conduct, defendant breached an
implied covenant of good faith and fair dealing.  Finally,

plaintiff brings claims of promissory estoppel and equitable estoppel against defendant, arguing that by its conduct and representations, defendant induced plaintiff to engage in certain conduct to plaintiff's detriment. Plaintiff seeks monetary and equitable relief. This Court has diversity jurisdiction over the cause. 28 U.S.C. § 1332.

Defendant now moves for summary judgment on plaintiff's Amended Complaint, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Plaintiff has responded to the motion, to which defendant has replied. For the following reasons, defendant's motion should be granted.

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue

for trial.  Id.  The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion.  Celotex, 477 U.S. at 324.

## I.  Procedural History

Plaintiff filed this cause of action in the United States District Court, Western District of Missouri, on December 10, 2008. The matter was transferred to this Court on April 10, 2009, after which this Court met with counsel regarding the status of the cause.  A Case Management Order was entered on June 2, 2009, setting forth schedules by which certain matters were to proceed, including a schedule governing discovery and the filing of dispositive motions.  Specifically, discovery was to commence with disclosures ordered to be made by July 6, 2009; and discovery was to be completed not later than July 15, 2010.  Dispositive motions, including motions for summary judgment, were ordered to be filed not later than August 2, 2010.  The cause thereafter proceeded through discovery, with the few discovery matters being brought to the Court's attention being resolved by the parties without Court intervention.  (See, e.g., Doc. #46.)  In the meanwhile, at the parties' request, the Court entered an Amended Case Management Order on March 11, 2010, in which the discovery deadline was extended to November 12, 2010; and the deadline for filing dispositive motions was extended to November 3, 2010.  (See Doc. #49.)  Trial is presently set in the cause on March 28, 2011.

On May 27, 2010, defendant filed the instant Motion for Summary Judgment on all of plaintiff's claims. Within its brief opposing the motion, plaintiff argued that any ruling on the motion would be premature under Fed. R. Civ. P. 56(f) inasmuch as defendant had refused to produce discoverable evidence requested by plaintiff[1]; and further, because the discovery period remained open and would not close until November 12, 2010. Plaintiff also addressed the merits of defendant's motion, however, arguing that there existed genuine issues of material fact precluding summary judgment. In support of its position, plaintiff submitted numerous exhibits, including deposition testimony, data regarding emergency road service calls made by itself and other contractors within and outside the relevant contract area, and defendant's answers and responses to discovery requests. (See Doc. #54.)

On July 1, 2010, plaintiff filed a Motion to Compel with respect to defendant's alleged failure to produce the requested discovery. After briefing closed, a hearing was held on the motion on September 8, 2010. Thereafter, on November 2, 2010, the Court entered an Order ruling plaintiff's Motion to Compel, ordering defendant to produce certain of the information requested by

_____

[1]Plaintiff specifically stated that it sought information from defendant relating to other Emergency Road Service contractors, their call volume in certain areas, their contract rates over time, and the payments received by them from defendant. (Pltf.'s Oppos., Doc. #54, at p. 15.)

plaintiff, and denying other of plaintiff's requests.[2] As noted in the Order, the parties were permitted to submit an appropriate Protective Order regarding the confidentiality of the material ordered to be produced. Such a Protective Order was submitted to the Court on November 23, 2010 (Doc. #79), and was entered in the cause on December 10, 2010 (Doc. #85).

In the meanwhile, in October 2010, plaintiff propounded additional discovery requests to defendant, for which defendant moved for additional time (beyond the discovery deadline) to respond and, in addition, moved for a protective order requesting that it not be required to respond to such requests *in toto* given their abusive nature. On November 10, 2010, plaintiff moved that the discovery deadline in this case be extended to January 11, 2011, given its outstanding discovery requests to defendant. On November 23, 2010, plaintiff filed a Motion to Compel relating to these requests, which was denied.

Since the filing of the Protective Order on December 10, 2010, which was put in place to protect the confidentiality of material the Court ordered defendant to produce to plaintiff, neither party has filed any supplemental documents in relation to the instant Motion for Summary Judgment, nor has either party

---

[2]The delay in ruling the motion arose out of a dispute between the parties as to what actually transpired at the motion hearing. The parties thus requested that a transcript of the hearing be prepared and consulted before a discovery order was entered. (See Doc. #60.) The transcript was filed October 25, 2010. (Doc. #62.)

sought leave to do so.

## II. Federal Rule of Civil Procedure 56(f)

"In analyzing whether a claim is ripe for summary judgment, a district court has discretion to determine whether the parties have had adequate time for discovery[.]" <u>Stanback v. Best Diversified Prods., Inc.</u>, 180 F.3d 903, 910 (8th Cir. 1999). Discovery need not be completed before a court can grant summary judgment. <u>Id.</u> at 911. However, summary judgment is proper only after the nonmovant has had adequate time to engage in discovery. <u>Id.</u>

> A party opposing summary judgment who believes that [it] has not had an adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56(f), which requires the filing of an affidavit with the trial court showing what specific facts further discovery might unveil. Where a party fails to carry [its] burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified.

<u>Id.</u> (internal quotation marks and citations omitted).

In this cause, plaintiff failed to file an affidavit as required under Fed. R. Civ. P. 56(f). Nevertheless, in the circumstances of this case, the Court determines plaintiff to have had adequate time to engage in discovery sufficient to oppose defendant's Motion for Summary Judgment.

Plaintiff's Complaint and Amended Complaint were filed in this cause in December 2008, twenty-six months ago. The parties

engaged in discovery throughout the course of the proceeding with no unresolvable discovery conflict arising until the filing of the instant Motion for Summary Judgment in May 2010. At the time the motion was filed, the case had been pending for seventeen months. In response to the motion, plaintiff complained that defendant had not responded to discovery requests and that such failure did not permit it to adequately respond to defendant's motion. A review of the record shows, however, that in September 2009, defendant answered and made objections to much of the discovery requests plaintiff now complains defendant failed to adequately respond to. (Pltf.'s Oppos., Doc. #54, Exhs. D & E.) Plaintiff did not seek to compel such discovery until July 2010, ten months later. It cannot be said in these circumstances that plaintiff did not have adequate time to conduct discovery.

In addition, at the hearing on September 8, 2010, defendant described the discovery previously provided to plaintiff which it thought was responsive to plaintiff's discovery requests. When questioned by the Court as to what additional information was desired, plaintiff's counsel responded, "I believe that's all we want, Your Honor." (Hrg. Tr., Doc. #62 at pp. 9-10.) Indeed, a review of the record shows the information as described by defendant to have been submitted by plaintiff as exhibits in support of its opposition to defendant's Motion for Summary Judgment. Plaintiff stated, however, that it sought additional

discovery relating to the specific type of work assigned to other contractors, and the dollar amount paid as reimbursements to such contractors. Plaintiff stated that such information was needed to establish its damages. (Hrg. Tr. at pp. 11-12.) On November 2, 2010, the Court ordered defendant to produce such information, and the Protective Order governing the confidentiality of such information was entered December 10, 2010. As noted previously, the parties have been silent since the filing of the Protective Order.

Based on the foregoing, the undersigned determines plaintiff to have had adequate opportunity to conduct discovery sufficient to oppose defendant's Motion for Summary Judgment. Plaintiff has failed to demonstrate to the contrary, either by affidavit or otherwise. The Court thus proceeds to determine defendant's Motion for Summary Judgment on the evidence and information presently before the Court. See <u>Stanback</u>, 180 F.3d at 911.

### III. Evidence Before the Court on the Motion

A review of the record in this cause shows the following facts not to be in dispute between the parties:

At all relevant times, defendant AAA Missouri provided emergency road services in the State of Alabama pursuant to an agreement with Alabama Motorists Association, an affiliated but separately owned American Automobile Association club. (Deft.'s

Exh. A, Young Affid.)  On October 11, 2001, plaintiff and defendant entered into an Emergency Road Service Agreement ("Agreement") whereby plaintiff agreed to provide certain road services to AAA club members in Alabama.  Prior to the execution of this Agreement on October 11, 2001, defendant AAA Missouri had no contractual relationship with plaintiff.  On February 27, 2006, defendant provided written notice to plaintiff that it was canceling the Agreement.  Plaintiff and defendant ceased doing business together in March 2006.

With respect to the geographic area within which plaintiff was to provide services under the Agreement, paragraph 9 of the Agreement provides as follows:

> AREA ASSIGNMENTS:  In order to assure the ready availability and prompt service to Members, it is expressly understood and agreed that the Contractor's [plaintiff's] non-exclusive Zone of Operation, which is made a part hereof as the attached Exhibit E, shall be limited as provided.  The Contractor shall provide the service required by this Agreement in said Zone of Operation described in Exhibit E.  The Club [defendant] shall have the right, at its discretion, and at any time, to alter, by reducing, enlarging, or otherwise changing the boundaries of the Contractor's Zone of Operation in said Exhibit E, by endorsement signed by the Club and the Contractor.  The Club shall have the right, at its discretion, and at any time, to appoint an additional emergency road service contractor(s) within said Zone of Operation in order to fulfill the Club's service obligations to its Members.

(Deft.'s Exh. A, Young Affid., Attch. 1, para. 9.)

Attached to the Agreement is a schedule of services to be provided by plaintiff and the rates at which defendant was to pay plaintiff for such services rendered. (<u>Id.</u>, Attch. 1, Exh. B.)

From October 2001 through the cancellation of the Agreement, defendant assigned calls to plaintiff within plaintiff's Zone of Operation as well as to areas outside of plaintiff's Zone of Operation. During this same period, defendant assigned calls from within plaintiff's Zone of Operation to contractors other than plaintiff. (Pltf.'s Oppos., Exh. B.)

At a time unknown, but within the contract period, a representative of defendant and a representative of a battery company visited a number of contractors, including plaintiff, and indicated that they were considering offering a battery service to their customers. Plaintiff was told that in order to provide such service, contractors would have to use a certain type of truck and that it would be preferable for each contractor to have their own truck. At the end of the meeting, these representatives told plaintiff that they would be in touch within ten days. (Pltf.'s Depo. at 21-22.) After not hearing anything for a couple of weeks, plaintiff contacted John Pate, defendant's representative, and was told that the plan was "still in the making," that he "[felt] like it's going to happen," and that plaintiff should start looking for a compatible truck. Plaintiff purchased a truck the following day. (Pltf.'s Depo. at 20-23.) Plaintiff heard nothing further from

defendant regarding the proposal. After a period of weeks, plaintiff and its employees observed another contractor handling battery calls from which plaintiff deduced that the battery service was given exclusively to the other contractor. When plaintiff contacted defendant's representative regarding the matter, plaintiff was told that its battery service assignments were basically lost. (<u>Id.</u> at 23-26.) Plaintiff went for a period of eight to thirteen months without receiving battery service calls from defendant. (<u>Id.</u> at 26, 61-63.) Plaintiff continued to receive and service other calls. (<u>Id.</u> at 25, 60.) Plaintiff later sold the truck back to a dealership at a loss. (Pltf.'s Depo. at 28-31, 63.)

In November 2005, defendant's representative, Sarah Keeton, visited plaintiff and indicated that defendant was considering expanding plaintiff's territory and asked whether plaintiff would be interested in such an expansion. Plaintiff said that it was. A day or two later, Ms. Keeton visited plaintiff again and indicated that plaintiff would need additional equipment for the expanded area, to which plaintiff responded that it was unwilling to commit to anything before knowing the area being considered. When plaintiff asked what constituted the additional territory, Ms. Keeton said that they were in the process of working out the details. Plaintiff offered suggestions to Ms. Keeton as to how its territory could be expanded. Ms. Keeton told plaintiff

that any expansion would take place "shortly into the first of the year," and that plaintiff would need three or four additional trucks for such expansion. Immediately after the meeting, plaintiff made arrangements to purchase two additional trucks. (Pltf.'s Depo. at 63-68.) Nothing before the Court shows that at this time, or at any other time during the contract period, did plaintiff and defendant sign an endorsement either reducing, enlarging, or otherwise changing the boundaries of plaintiff's Zone of Operation.

At a luncheon meeting in January 2006, defendant informed plaintiff that, with changes in the company, plaintiff's continued service as a contractor with the defendant could not be guaranteed. (Pltf.'s Depo. at 73-75.) Thereafter, plaintiff received a letter from defendant, dated February 27, 2006, which stated:

> This letter is formal written notice that pursuant to Paragraph 11 of the Emergency Road Service Agreement made on October 11, 2001 . . . AAA Missouri is canceling its agreement with Bruce's Wrecker Service, Inc. upon "ten (10) days written notice."

(Deft.'s Exh. A, Young Affid., Attach. 2.)

Paragraph 11 of the Agreement states:

> CANCELLATION:  This Agreement may be canceled without cause by either party upon ten (10) days written notice to the other party[.]

(Id., Attach. 1, para. 11.)

In April 2006, defendant AAA Missouri ceased providing emergency roadside services for its Alabama affiliate. (Deft.'s Exh. A, Young Affid.)

## IV.  Discussion

Pursuant to paragraph 16 of the Agreement, and upon agreement of the parties, Alabama law governs matters involving the Agreement.[3] To the extent this cause involves non-contractual matters, Alabama law continues to apply. In the circumstances of this case, including the situs of the alleged injury, the place where the conduct causing the alleged injury occurred, the place of business of the parties, and the place where the relationship of the parties is centered, it is apparent that the State of Alabama has the most significant relationship to this cause of action. See Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir. 1994); Kennedy v. Dixon, 439 S.W.2d 173, 181 (Mo. banc 1969).

A.  Breach of Contract

In Count I of its Amended Complaint, plaintiff claims that defendant breached the terms of the Agreement when it assigned tow and service calls within plaintiff's service area to other contractors; deprived plaintiff of light service and battery calls for a thirteen-month period; and terminated plaintiff as a contractor.

---

[3]"This agreement shall be governed by the laws of the state of Alabama." (Deft.'s Exh. A, Young Affid., Attch. 1, para. 16.)

To prevail on a breach of contract claim, plaintiff must demonstrate 1) the existence of a valid contract binding the parties, 2) plaintiff's own performance under the contract, 3) the defendant's nonperformance, and 4) damages. <u>Baldwin v. Panetta</u>, 4 So. 3d 555, 561 (Ala. Civ. App. 2008) (citing <u>Southern Med. Health Sys., Inc. v. Vaughn</u>, 669 So. 2d 98, 99 (Ala. 1995)). There is no dispute that the Agreement constituted a valid contract between the parties and that plaintiff performed under the contract. The undisputed evidence before the Court shows, however, that defendant did not engage in nonperformance and, indeed, performed within the terms of the Agreement.

1.  <u>Assignment of Calls to Other Contractors</u>

To the extent plaintiff claims that defendant assigned tow and service calls within plaintiff's service area to other contractors, the plain and unambiguous terms of the Agreement permitted defendant to do so. Paragraph 9 of the Agreement expressly states that plaintiff's Zone of Operation was "nonexclusive" and that defendant had the discretion to appoint, at any time, additional emergency road service contractors within plaintiff's Zone of Operation in order to fulfill defendant's service obligations to its members. Defendant's appointment of other contractors to provide services within plaintiff's Zone of Operation plainly falls within the parameters of the Agreement.

Plaintiff argues, however, that paragraph 9 of the

Agreement is ambiguous and that various terms therein render the clause unreasonable. Plaintiff contends that because factual issues surround the construction of such ambiguous terms and the intent of the parties, resolution of such issues should be left to a jury. Plaintiff specifically challenges the terms "appoint" and "nonexclusive Zone of Operation," as well as the provision permitting defendant to exercise "discretion" in order to fulfill its obligations.

"General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract." Drummond Co. v. Walter Indus., Inc., 962 So. 2d 753, 780 (Ala. 2006). "In determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein. . . . The words are given the meaning that persons with a usual and ordinary understanding would place on the words." Progressive Specialty Ins. Co. v. Naramore, 950 So. 2d 1138, 1141 (Ala. 2006). The fact that parties may construe a term differently does not in itself lead to the conclusion that the disputed language is ambiguous. Cannon By & Through Cannon v. State Farm Mut. Auto. Ins. Co., 590 So. 2d 191, 194 (Ala. 1991).

The term "nonexclusive Zone of Operation" is not ambiguous. It is undisputed that a defined territory was designated within which defendant assigned service calls to

plaintiff to provide road services to defendant's member-customers. The Agreement plainly describes such territory as "nonexclusive." Giving the term "nonexclusive" its usual and ordinary meaning, a reasonable person would understand that plaintiff was not conferred the right to be free from competition within this territory nor that defendant was prevented from assigning calls from within the territory to other contractors. Other than its ordinary meaning, plaintiff provides no other construction of the term "nonexclusive" from which the Court could conclude that such term is ambiguous.

Nor is the term "appoint" ambiguous. Plaintiff itself provides the Court with definitions consistent with the use of this term in the Agreement. (<u>See</u> Pltf.'s Oppos. at pp. 5-6.) Plaintiff appears to argue, however, that multiple uses of the term "appoint" or "appointment" within the Agreement render the term ambiguous as it is used within paragraph 9. Throughout the Agreement, reference is made to those who submit applications for "appointment" to be a contractor for defendant, or whose actions could cause termination of its "appointment" as a contractor for defendant. Language addressing the appointment of AAA contractors or the termination of such contractors' appointments does not render the term "appoint" in paragraph 9 ambiguous. Indeed, when viewed in context, the language in paragraph 9 providing defendant the discretion to "appoint an additional emergency road service contractor(s)" within plaintiff's Zone of Operation is consistent with the remainder of

the Agreement requiring that such service contractors apply for such appointment with AAA Missouri and meet certain requirements therefor. Although plaintiff states that it remains unknown whether the other contractors providing services within its territory were properly "appointed" to do so, conclusory and speculative allegations, with nothing more, are insufficient to defeat summary judgment on this claim. See Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (to withstand summary judgment, plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in its favor based on more than mere speculation, conjecture, or fantasy); see also Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1028 (8th Cir. 2006) (speculation and conjecture are insufficient to defeat summary judgment).

Finally, paragraph 9's allowance of defendant's "discretion" to appoint other contractors within plaintiff's territory does not render the paragraph or the Agreement ambiguous. Under Alabama law, "sole discretion" means an absolute reservation of a right. Shoney's LLC v. MAC East, LLC, 27 So. 3d 1216, 1220 (Ala. 2009). "[A]n absolute right or privilege . . . can be exercised without incurring liability regardless of the motive for so doing." Id. at 1221 (internal quotation marks and citation omitted). Where a contract entered into by competent parties includes unambiguous language providing such discretion to one

party, courts will not interfere with the rights of either party to enter into such a contract.  Id. at 1223.  "'[T]he court will presume that the parties intended what they stated and will enforce the contract as written.'"  Id. at 1222 (quoting Homes of the Legend, Inc. v. McCollough, 776 So. 2d 741, 746 (Ala. 2000)).

> Therefore, an unqualified express standard such as "sole discretion" is also to be construed as written.  [W]here the language is unambiguous, and but one reasonable construction of the contract is possible, it must be expounded as made, as *the courts are not at liberty to make new contracts for the parties*.

Shoney's LLC, 27 So. 3d at 1223 (internal quotation marks and citation omitted) (emphasis in Shoney's LLC).

Here, the evidence before the Court shows both parties to have been competent to contract and that the Agreement was an arm's length transaction.  Indeed, a review of the Agreement itself shows plaintiff to have edited various of its terms prior to its execution.  (Deft.'s Exh. A, Young Affid., Attch. 1, Exh. B.) "[P]arties are free to negotiate a contract to whatever standard they please, particularly where there is an arm's length negotiation[.]"  Shoney's LLC, 27 So. 3d at 1221.  To the extent plaintiff claims that it remains unknown whether defendant exercised its discretion "in order to fulfill the obligations of its members," speculative and unsupported allegations are insufficient to defeat summary judgment.  Bloom, 440 F.3d at 1028;

Moody, 23 F.3d at 1412.

For these same reasons, plaintiff's claim that defendant wrongfully deprived plaintiff of light service and battery calls for a thirteen-month period and instead assigned such calls to another contractor, fails. Pursuant to the plain and unambiguous terms of the Agreement, defendant retained the discretion to appoint other contractors to answer service calls within plaintiff's Zone of Operation in order to fulfill its obligations to its members. Nothing in the Agreement required defendant to assign light service and battery calls to plaintiff. Nor does a review of AAA's Call Record show plaintiff's service within its Zone of Operation to have declined. Indeed, the Call Record shows the number of calls accepted by plaintiff within its Zone of Operation to have steadily increased throughout the duration of the contract. (See Pltf.'s Oppos., Exh. B.)[4]

Because defendant's assignment of other contractors to answer calls within plaintiff's Zone of Operation did not breach the terms of the Agreement, defendant is entitled to summary judgment on plaintiff's claim of such breach.

2. Termination of Agreement

Paragraph 11 of the Agreement permitted either party to cancel the Agreement, without cause, upon ten days written notice.

_____

[4]Calls accepted by plaintiff originating in its nonexclusive Zone of Operation:  Oct. thru Dec. 2001 — 2,188; 2002 — 9,004; 2003 — 9,028; 2004 — 9,643; 2005 — 11,923; Jan. thru Mar. 2006 — 2,145. (Pltf.'s Oppos., Exh. B.)

The undisputed evidence in this case shows defendant's conduct in terminating the Agreement to have fallen squarely within these terms. To the extent plaintiff alleges in its Complaint that such termination was "without just cause," the terms of the Agreement expressly state that termination may be made "without cause." The Court presumes the parties intended what they stated and will enforce the contract as written. See Shoney's LLC, 27 So. 3d at 1222. Defendant should therefore be granted summary judgment on plaintiff's claim that defendant's termination of the Agreement constituted a breach of contract.

B. <u>Implied Covenant of Good Faith and Fair Dealing</u>

Alabama law does not recognize a tort claim for bad faith performance beyond the context of insurance contract cases. See Grant v. Butler, 590 So. 2d 254, 256 (Ala. 1991).

> Although every contract contains either an express or an implied covenant that the parties will act in good faith in performing the contract, in Alabama only insurance contracts give rise to a duty imposed by law on which a tort claim for bad faith performance can be based. We have consistently declined in the past, and we decline again today, to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance contract cases.

Id.

As such, to the extent plaintiff brings this claim under a tort theory of recovery, defendant is entitled to summary judgment

thereon.  See Harrell v. Reynolds Metals Co., 495 So. 2d 1381, 1388-89 (Ala. 1986).

To the extent plaintiff brings this claim as an extension of its breach of contract claim as opposed to a claim arising in tort, Alabama law provides that "[t]here is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; . . . in every contract there exists an implied covenant of good faith and fair dealing." Lloyd Nolan Found., Inc. v. City of Fairfield Healthcare Auth., 837 So. 2d 253, 267 (Ala. 2002) (internal quotation marks and citation omitted). "There can be no breach of an implied covenant of good faith[, however,] where a party to contract has done what the provisions of the contract expressly give him the right to do." Shoney's LLC, LLC, 27 So. 3d at 1221 (internal quotation marks and citation omitted).  In other words, where there is no identifiable breach in the specific terms of the contract, there is no contractual cause of action for breach of an implied duty of good faith and fair dealing.  See Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc., 601 So. 2d 942, 945 (Ala. 1992).  Such a claim does not "nebulously hover[] over the contracting parties, free from the specific terms of the contract." Id.

Because defendant did not breach the terms of the Agreement, plaintiff cannot prevail on its claim of bad faith.

- 21 -

Hipps v. Lauderdale County Bd. of Educ., 631 So. 2d 1023, 1026 (Ala. Civ. App. 1993).   Defendant is therefore entitled to summary judgment on plaintiff's claim of breach of implied covenant of good faith and fair dealing.

C.   Promissory Estoppel

Plaintiff claims that defendant induced it to purchase additional vehicles so that it could participate in the battery service program and could expand its territory beyond its then-current Zone of Operation.   Plaintiff claims that defendant's failure to follow through on its promises caused plaintiff to suffer a monetary loss on the purchase and subsequent return of these vehicles.

For promissory estoppel to apply under Alabama law, there must be "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance[.]" Mazer v. Jackson Ins. Agency, 340 So. 2d 770, 772-73 (Ala. 1976) (internal quotation marks and citation omitted).   Such a promise "is binding if injustice can be avoided only by enforcement of the promise." Id. (internal quotation marks and citation omitted).   Promissory estoppel requires that the promise or representation of the party estopped be made with the intention, or at least the reasonable expectation, that it will be acted on by the other party.   Id. at 774.

"An express promise is not necessary to establish a promissory estoppel. It is sufficient that there be promissory elements which would lull the promisee into a false sense of security." Mazer, 340 So. 2d at 774. Although an express promise is not necessary to create an estoppel, the promise must nevertheless be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." Wyatt v. BellSouth, Inc., 176 F.R.D. 627, 631 (M.D. Ala. 1998). A vague, indeterminate promise that certain circumstances would exist, without more, is not sufficiently specific to warrant judicial imposition of this equitable remedy. See Selma Hous. Dev. Corp. v. Selma Hous. Auth., No. Civ.A. 04-0449-WS-B, 2005 WL 1981290, at *9 n.22 (S.D. Ala. Aug. 16, 2005). Cf. Bell v. Morrison, 26 U.S. 351, 352 (1828) ("[I]f the expressions be equivocal, vague, or indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; they ought not to go to a jury as evidence of a new promise[.]"). See also Smith v. Wachovia Bank, N.A., 33 So. 3d 1191, 1197 (Ala. 2009) ("A 'promise' is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'") (quoting Restatement (Second) of Contracts § 2(1) (1981)).

1. <u>Battery Service Calls</u>

The undisputed evidence before the Court shows that at the time plaintiff purchased the truck for the contemplated battery service, defendant had not represented to plaintiff that it would use plaintiff for such service. Indeed, during the last communication regarding the matter prior to plaintiff's purchase of the truck, Mr. Pate told plaintiff that arrangements were still being made and that he "[felt] like it [was] going to happen." Although plaintiff was encouraged to start looking for a truck, plaintiff's purchase of a truck the day following this conversation was premature given the equivocal statements and the uncertainty of the proposal. Equivocal statements that arrangements had not yet been made coupled with a vague and indeterminate "feeling" that such arrangements would happen are insufficient to constitute a promise subject to promissory estoppel. <u>Wyatt</u>, 176 F.R.D. at 631; <u>Selma Hous. Dev. Corp.</u>, 2005 WL 1981290, at *9 n.22; <u>cf.</u> <u>Harbison v. Albertville Nat'l Bank</u>, 495 So. 2d 1084, 1086 (Ala. 1986) (a speculation of something that might take place in the future is not a promise). <u>Contra</u> <u>Mazer</u>, 340 So. 2d at 773-74 (promissory estoppel applied where written memorandum stated that resolution had passed and written assurances were made about the contemplated use of the property at issue).

2. <u>Expansion of Territory</u>

Nor can it be said that Ms. Keeton's November 2005

statements regarding the possible expansion of plaintiff's territory constituted a promise subject to promissory estoppel. The evidence shows plaintiff and Ms. Keeton to have had two conversations in early November 2005 regarding expansion: the first regarding whether plaintiff would be interested in expansion, and the second regarding plaintiff's need for additional trucks if its territory were to expand. During this last conversation, plaintiff asked about the potential expanded area, to which Ms. Keeton responded that the details had yet to be worked out. Plaintiff then offered suggestions to Ms. Keeton as to what could constitute the boundaries of its new territory, but stated that it could not commit until the expanded area was defined. Ms. Keeton also stated to plaintiff during this last conversation that any such expansion would not take place until after the first of the year. Immediately after this second conversation, plaintiff made arrangements to purchase two trucks.

As with the statements surrounding the contemplated battery service, discussed supra, defendant's statements here regarding the possibility of expanding plaintiff's territory were not sufficiently specific such that one can understand the obligation assumed by defendant and enforce the promise according to its terms. Indeed, there are no terms of this purported promise. "Although . . . promissory estoppel may render a nonbinding agreement binding, it cannot create the agreement; there

must be an underlying promise in such an instance." <u>Burrell v.</u> <u>Carraway Methodist Hosp. of Ala., Inc.</u>, 607 So. 2d 193, 196 (Ala. 1992). Defendant did not make a promise to plaintiff that it would expand plaintiff's territory. Instead, the undisputed evidence shows that defendant inquired as to plaintiff's interest in expanding its territory and thereafter informed plaintiff that if its territory were to be expanded, it would need additional trucks. Plaintiff stated that it could not commit to such action without knowing the defined area of expansion, but no specific information regarding the expanded territory was provided by defendant. Indeed, Ms. Keeton stated that the details had not yet been determined. In addition, the time frame for such expansion was indeterminate. With such indefinite statements, it cannot be said that defendant made a commitment to plaintiff such that plaintiff was justified to arrange the purchase of two trucks immediately after such statements. <u>Cf.</u> <u>Harbison</u>, 495 So. 2d at 1086.

This conclusion is bolstered by the terms of the written Agreement itself. The Agreement expressly states that a contractor's Zone of Operation could be altered, enlarged, or otherwise changed "by endorsement signed by the Club and the Contractor." (Deft.'s Exh. A, Young Affid., Attch. 1, para. 9.) The Agreement also provides that the Agreement "may not be amended or modified except in writing executed by both parties." (<u>Id.</u> at para. 18.) The undisputed evidence before the Court shows that at

no time did the parties prepare and/or sign an endorsement changing the boundaries of plaintiff's Zone of Operation. Nor is there any other written amendment or modification to the Agreement.

In light of the above, defendant's statements do not constitute "promises," let alone promises which it should have reasonably expected to induce plaintiff to purchase additional vehicles for emergency road service. Defendant is therefore entitled to summary judgment on plaintiff's claim of promissory estoppel.

D.   Equitable Estoppel

To establish equitable estoppel, plaintiff must demonstrate that

> [t]he actor, who usually must have knowledge of the true facts, communicate[d] something in a misleading way, either by words, conduct or silence. The other relie[d] upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

Mazer, 340 So. 2d at 773 (internal quotation marks omitted)

> 1. There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon

by him.  4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . .  5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.  6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

Id.

As discussed above, it cannot be said that defendant's challenged statements and/or conduct here rise to the level of actionable promises upon which one would reasonably expect plaintiff to act to its detriment.  Nevertheless, the record in this case shows no misrepresentation or deliberate conduct designed to consciously and unfairly mislead plaintiff.  The most that can be said is that the parties engaged in discussions and preliminary negotiations which plaintiff hoped would eventually result in additional work and/or territory.  "That the negotiations proved unfruitful does not warrant application of equitable estoppel." Coley v. Lang, 339 So. 2d 70, 74-75 (Ala. Civ. App. 1976).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Automobile Club of Missouri's Motion for Summary Judgment (Doc. #51) is granted in all

respects.

       **IT IS FURTHER ORDERED** that all other motions which remain pending in this cause are denied as moot.

       Judgment shall be entered accordingly.


_____
UNITED STATES MAGISTRATE JUDGE


Dated this _16th_ day of February, 2011.